All right, the next case is 20-1640, 20-1644 DENC, LLC v. Philadelphia Indemnity Insurance Company. Here's another insurance case. Here we go again. All right, Mr. Brown, you're up. Good afternoon, Your Honor. May it please the Court, my name is David Brown. I'm with Wilbur Sagala Firm in Greensboro, North Carolina. I have the privilege of representing Philadelphia Indemnity Insurance Company in this case. Judge Diaz, I appreciate the Court's comments about not being experts after sitting here for the last argument and now knowing what you've read in this one coming in. We're going to be experts on the collapse coverage and commercial property policies here soon enough, so I appreciate that very much. Of course, this is indeed a case that involves several issues. Fundamentally, my client, Philadelphia, appeals a determination there was coverage under a collapse endorsement and a commercial property policy for a loss that occurred in Eli, North Carolina. We also appeal the determination that there was a willful violation of the North Carolina Unfairness Secretary Practices Statute, such that attorney's fees were awarded to the plaintiff. Then the plaintiff cross-appeals the District Court's determination that only nominal damages would be awarded as a result of the violation of that statute. This loss occurred to a commercial building in North Carolina. It was a student apartment building, as the Court is well aware. A 14-year-old building built in 2004, and the loss date was reported as 2018. I think the record is clear and undisputed that there were significant construction problems here. There was water that was allowed to intrude into the cavity of the breezeway, the walkway, if you will, underneath the second floor of the housing, the apartment building. It's undisputed that the dryers, that is laundry dryers from the washer and dryer room, were allowed to vent into that call place. And over time, there have been significant deterioration, significant wood rot, and significant problems created as a result thereof, necessitating significant repairs that needed to be made. On the morning of January 14, 2018, there was a report that a number of students from the University had been gathered on the second floor on that breezeway. Kind of unclear in the record, candidly, how many there were, but clearly there were a number. Fifteen on the low end, as many as 100 students in the apartment building at some point that night on the high end. And then thereafter, there was no distinct inflection. It's sagging, a cracking, again, depending upon where you look in the from an inch to a foot. But the pictures, I think, make pretty clear in the joint appendix that it was a deflection of, you know, a couple of inches or so in that walkway. Philadelphia was, the claim was reported to Philadelphia. It immediately adjusted the claim, sent out an investigator who indicated that there was a, that in his initial opinion, that the loss resulted from this long-term deterioration. Immediately, an engineer was hired. The engineer retained by Philadelphia came out, offered an opinion and a report that it was not, the loss was not caused by any sort of abrupt event that occurred, but rather was the result of long-term deterioration. And fast forward to discovery in this case, the plaintiff's engineer really didn't dispute that. So, I think we've got a situation where there is an event that happened of some sort, some amount, on that early morning hours of January 14, 2018. You've also got a situation where the repairs were also needed, undoubtedly, because of long-term problems that had gone on due to defective construction. The district... But you don't... All right. But there, correct me if I'm wrong, I don't recall there being any evidence that the sagging or cracking or collapsing or whatever we're comfortable calling it, that that was occurring gradually over time. There was evidence that the structural integrity was being undermined, but that, you know, in a moment during this student party, the, you know, the collapse, for lack of a better word, happened, that there was something abrupt, even if the structural integrity of the supports had been slowly deteriorating. I don't recall there being any evidence that there wasn't this sort of abrupt moment when things changed. Well, the engineer, Mr. Moore, from Philadelphia, whose report is in the appendix, he testified that it was not an abrupt event, but rather it was a long-term event. But I will agree with your honor that the first notice of any sort of crack in that area was at the student party that night. I think one of the questions becomes, what really caused the need for the repairs? Was it the long-term event or was it that sudden event? But I acknowledge the court's point. Do you contest that... Oh, sorry. So the collapse, I'm a little perplexed by this. The additional coverage provision refers, says it only applies to abrupt collapse, which it defines as abrupt falling down or caving in. But the exclusion above that refers to collapse, not just abrupt collapse, which I guess we should take to mean falling down or caving in that may or may not be abrupt. And I was looking in your brief to see where or if you dispute that this was a falling down or a caving in. Is that something that you, you know, for purposes of the exclusion and the exception to the exclusion, do you contest that this was a falling down or caving in, that this was a collapse for whatever that means under the exception to the exclusion? We do dispute that. We do dispute that there was a falling down or a caving in. And if I may, I appreciate the court coming right to the heart of it. So the district court found that there were three exclusions before we get to the collapse endorsement that would bar coverage under the policy. The decay or deterioration exclusion, the faulty workmanship exclusion, and the long-term water exclusion. That's it. Appendix 658, kind of footnote 500, which is the court's initial order. That has not been challenged, not disputed, not appealed. So any one of those exclusions standing alone would be sufficient to bar coverage for this claim. So the way to, the coverage exists. You say that's not appealed, but the district court didn't find that those barred coverage because they're not, they don't have anti-concurrent cause language, as we talked about in the previous case, right? The district court said that there is coverage. The only one that does, the defective construction, actually the defective construction goes on to say even if there's a covered cause, it would be covered. So I don't, what do you mean it wasn't appealed? Well, I guess the point is that the only route to coverage here is through the collapse endorsement. In other words, if there was not, we don't contend the collapse exclusion applies. The question I think for the court is whether the collapse endorsement that affords coverage that otherwise would not exist under the policy applies or not. And I think- Didn't the district court say that they both applied? Am I misremembering that? The district court did indeed find that coverage was created via the collapse exclusion. You are correct in remembering that. And we fundamentally contend that coverage cannot be created via an exclusion. That coverage is created through insuring grants and then pared back through exclusions and then can be re-estated through exception to exclusion, but that fundamentally the route to coverage is through a grant of coverage. Mr. Brown, I'm a little further down the road than you are. Let's assume the judge was right. And, but as to the, and he's right about, if he's, that he's right about the unfair trade practice, why shouldn't that be vacated and the damages that are equal to the contract damage be put, it be part of the calculation so that let's assume it was $300,000. Then you go to the unfair trade practice, which he found. Why shouldn't that have been troubled? Uh, uh, so, uh, which would also take care of the attorney's fees because it seems to me, this is just like some, I understand it can't recover on both. And so it's just a classic election of remedies. So, uh, didn't the judge air in just, just awarding a $1 nominal damage in the unfair trade practice? Uh, no, not at all, your honor, because the North Carolina Supreme Court answered this very question in the gray case, uh, the gray versus do an underwriting case, uh, from 2000. Um, that's discussed at length that that very issue was before the Supreme Court. Um, and the chief justice Frye's opinion in that case, uh, consider the very argument that's been made by the, by the ENC here and that the court just, just outlined, that is what damages get troubled. And what the Supreme Court held is that the legislature intended for the phrase trouble the amount fixed by the verdict to mean that damages proximately caused by a violation shall be troubled, not that damages on every claim that happens to arise in a case involving a chapter 75 violation shall be troubled. Uh, the court has stated that in order to of the violation. So in other words, in order to recover treble damages, a successful litigant has to not only prove all of the elements of the claim, but then prove what damages were proximately caused by that violation. So now that brings us to and begs the question of what was the violation found in it? Because as you know, there was a bad faith claim where summary there were allegations that Mr. Brown, can I ask you a question about, sorry, this just is about that. So, I mean, subsequent to gray, there've been a number of court of appeals opinions that have talked about UDTPA claims in the context of what, uh, for lack of a better term, I'll, I'll describe as an aggravated breach of contract where there are, there is a breach of contract, but then there are attended circumstances that act served to aggravate that breach. And the courts of appeals have held not withstanding gray and some instances, uh, citing to gray that in those instances, um, because the attendant, uh, aggravating circumstances are part and parcel of the breach of contract that, that those in fact can form the basis for a troubling of damages. Isn't that what we have, what we have here respectfully? No, no, it's not I think what the cases have held is that if the unfair act calls the claim to be denied. So if Philadelphia engaged in some sort of unfair act that was found either as a matter of law or submitted to the jury and found by a fact finder, that it did something unfair deceptive that caused it to deny the claim that potentially the contract damages could be troubled. But here the district court found correctly so that there was an honest disagreement as to whether there was coverage or not under the collapse endorsement and consequently granted summary judgment for Philadelphia on the bad faith plan and on three of the four unfair trade practice about alleged violations. But you don't have to have bad, you don't have to have bad faith in order to recover under unfair trade practices case do you? You do not and you have to find willfulness in order to afford attorney's fees and so that's one of our contentions is that there's not the requisite willfulness here to award fees. But the court's right, you don't have to have bad faith to have a violation chapter 75 but what you do have to have is you do have to show what damages were caused by that violation and to judge Diaz's point cases that have found that the contract damages get troubled are necessarily have always have been cases where there was something unfair deceptive in the denial of the claim itself. And here the violation that was found bearing in mind the court found in favor of DNC on one of the four alleged violations. The violation that was found was a failure to properly explain the position in a denial letter. Not the violation was not the denial of the claim. The violation was that the denial letter itself was somehow viewed to be confusing and that the insured had to then you know figure out what was meant by that letter which eventually was done thereafter. But the point is Judge Diaz the the damages I think the courts have been fairly you know not fairly have been extremely consistent both in in state court and in the federal courts applying North Carolina law that contract damages do not get troubled unless there was something unfair deceptive in the very denial of the claim. Otherwise what a insured has to prove is the damages that were approximately caused by the unfair act. So I think Judge Eagles was right on the mark in tying tying the the need to question of whether damages can be troubled to a finding of what was unfair and what was found to be unfair was the denial letter. Nothing more nothing less but the denial letter itself. Not the fact of the denial but the fact the argument was that the denial letter was somehow confusing and as a consequence that's what was found. Well not just confusing but deceptive right unfair. Well I guess I guess I'll just abide by what the district court said which is it was violation subsection n of 58 63 15 11. But the I guess the the point here that I want to say is that if you look at the gray case it was a hurricane claim. A hurricane was not an unfair trade practice. How the insurance company handled the hurricane claim in certain respects was found to be an unfair trade practice. In that case the contract damages did not get troubled. Here if there was a collapse which we dispute the collapse was not an unfair trade practice. So whatever damages caused by that don't get troubled. Rather there has to be some showing of damages that were possibly caused by the unfair act was found in order to trouble those damages. I see I'm out of time for now. Thank you Mr. Brown. Mr. McDougall. Good afternoon your honors. Thank you David Brown. Appreciate it. The David made Mr. Brown made two statements. Courts found trouble damages if the wrong conduct is in the denial itself. Here the wrong conduct was in the denial itself. A letter denying coverage with nine different misrepresentations citing the actual wrong provisions that were amended. Citing provisions that left out. It only cited the it's exclusions for the collapse but not the coverage provisions for the collapse. It also said things like flood may have occurred. Well there was no flood at Elon. He admitted that. He said boilers may have caused it. There are no boilers at this facility. He admitted that. He went on and on and on and there were nine different things he said no that had nothing to do with what he was talking about. If you look at it carefully in the letter he cites the wrong collapse provision that was amended by endorsement and the entire collapse provision was completely gutted and amended. This Mr. Gertling from Colorado for some reason sent that. What is if you look at it real carefully though he then cites the exclusions and the new amended collapse provision that was provided. I have a question about that counsel. So the provision of the end provision that you were you prevailed under requires a reasonable explanation of the basis for the denial and you have to in the explanation you have to cite the policy provisions and the facts. What about the letter was not an explanation of the basis for the insurer's denial? I understand they had extraneous provisions they didn't need to include in the end but they explain the facts and they cited the collapse provision under which they think coverage should be denied. Now even if they're wrong about that, that was the basis for their denial. How is this a violation of section n? As the judge pointed out and as I point out not once did they talk about collision and I mean collapse applying to anything in the policy. What they did is they took the exclusions and they even put number one so the exclusion started in a section with a number three. So if you see a three you know there's a one and two that preceded so it says b three is what he cited and those are exclusions one and two are coverage provisions. So if you see yeah he didn't cite he didn't yeah I'm totally accepting you're right that the letter didn't quote the entire insurance agreement and there may have even been misrepresentations right there was a provision that's not even in this policy about fungus or but you you didn't prevail under the misrepresentation provision of North Carolina law. The court found you didn't win under that and there is a separate provision for misrepresentations where you rely on it or something and and there's no evidence of that. The only thing in front of us on appeal is whether there's an explanation for the basis of denial in this letter and it looks like there then there wasn't so you have the rule 58 and the questions I mean it goes the letter is unbelievable if you look at it it doesn't tie any provision of the policy with any of the facts. The judge said that over and over she said it was a convoluted mess and well it says long-term water intrusion and deteriorated wood framing the result of an and then it cites all the provisions of the policy I think that have anything to do with water because it thinks that this was caused by a water management problem and it cites parts about deterioration and fungus and and things like that. I apologize for interrupting. Yeah it's hard to hear you when you talk over me. They have to tie the policy language though into the facts and they never did that they just cited. Why do they have to but they do both of those what you're citing the provision after the sentence where they explain why you're denied and that's why it violates section n. If you read it closely it just says the following exclusions appear in the policy it doesn't say how flood is involved it doesn't say that boilers are involved they're just sending it out to basically you're saying that's not a reasonable explanation for the basis of the denial if they explain why they denied it and they cite the policy provisions that they don't go on to for each provision they cite they don't give an additional explanation of you know the reason why we're citing flood to you is x that North Carolina requires that level of explanation is what you're saying some level explanation there was none there was nothing what's your best case for the level of explanation North Carolina requires I haven't found any found I could use some help I really could use some help from North Carolina on this court that had no just absolutely just said we're denying the claim and they said that's a violation right similar to this it says we're denying the claim on flood it's you know the tenant obviously and the judge said this what else would be the intent of putting in boilers when there's no boilers in the site flood when there wasn't a flood in Elon in years ever and he just says I put it in because I wanted to well I'm not sure that doesn't that I'm not sure that takes away the explanation in the letter the question is was there an explanation even if you have all these extraneous things they might be misrepresentations but you you lost on that you didn't appeal it but I don't want to take up all your time on this because you'd need to argue about my coverage judge said misrepresentation takes reliance our provision does not take reliance so she ruled in our favor we don't have to show reliance many courts have already said that and you know what's the catch-22 here is okay you send out a letter like that and the policy holder looks at it and says I have been deceived I'm not going to go anywhere okay I believe the insurance company what happens they go home they lose $450,000 because they and if you've been deceived there's a provision for that but this is just about whether they gave an explanation even if the explanation was wrong but it's an explanation they believed and they gave it and it's it's one of the regulatory I mean it's actually a statute that you have to do this and the effect of it is one that person's going to believe it and not understand it I mean this thing is unbelievable it it only has three pages of policy language and then it has constant changes over and over and over 150 pages and the normal person I mean I've been doing this for years I couldn't understand it the and for him then to get a letter with all this stuff he's going to say I don't understand it but what's important a week two weeks before that he received a letter from a vice president home office grimoire philadelphia saying you have coverage and we will be paying your claim no retraction no reservation of rights he thinks that my claim is going to be paid they have yet today say that doesn't count so we've got a letter saying we're going to be paid then they send a letter that makes no sense saying you're not going to get paid and we're going to cite mr dugo can I uh can I ask a question about uh the supreme court's decision in gray because your colleague mentioned that that case is dispositive on this issue of um because his client was entitled at least to contest the issue of liability on coverage that any damages that flowed from the manner in which they contested the coverage and you've outlined that in the letter all the things that they said in the letter that I think I would agree with you don't seem to make sense but that that wasn't the approximate cause of your client's damage it was the denial of the coverage which they were entitled because the court didn't find any bad faith uh liability uh that they were entitled to to deny and so that's what makes gray dispositive on the issue of treble damages what what's wrong with that argument first of all gray says there were no aggravating factors it went to the jury and the plain lawyer sent the interrogatories never asks are there any aggravating factors and also they didn't ask is this a one continuous transaction with a breach contract and the you know mailing the letter with the person who made a claim that the property they had a lien on the property so there's all these different actions but nobody even talked about it the interrogatories but that they did say in my opinion there were no egregious there was no egregious conduct found so therefore they could not trouble the breach of contract damages they troubled as a matter of law as you do the unfair and deceptive 117 000 but not the breach contract because nobody asked and so then after that as you noted there have been court of appeals several court of appeals decisions for surrogate for polamu says the same thing that you get trouble damages if in case there's three different ways yeah and the law right now is not clear which one but you do get them you get the continuous conduct it's a continuous transaction so what philadelphia states dnc has not come forward with evidence of any injury or damage that resulted from the alleged statutory violations separate from the damages that resulted from the alleged breach of the policy by philadelphia's denial of coverage trying to separate it out okay you have a breach contract the 401 000 plus interest of 67 000 and then you have the unfair and deceptive trade practices that if they believe you they go away and there's no lawsuit if they don't believe you they're going to say there's no reliance there's no damages so they just the statute's a nullity according to them so then you look at it okay we have not come forward with any evidence well it is one continuous transaction and the continuous transaction has been recognized since miller v miller long time ago 1980 one of the seminal cases says you need a continuous transaction you have breach of contract and you have unfair and deceptive and they are related then you have a continuous transaction you have harlock versus henson same thing over three year period guy sells goes to a broker and says sell my truck sells his truck tells him i didn't sell your truck i didn't sell it he sees it one day being driven by another person says i'm going to sue you all my money for my truck he gets to sue him wins and they give him the money for the truck and they give him unfair and deceptive trade practices and what they do is treble the breach of contract it's all one you know you can't separate it so the damages approximate cause damages are all related it's i think somebody earlier used you know the circular method you know if they're overlapping you have a continuous transaction what could be more continuous than a denial letter that contains the unscrupulous behavior that their only hope was to make these people go away and if it doesn't work then you say well we don't have trouble damages nothing to lose we know we have coverage or don't have we know we have coverage so why not take a shot at throwing this letter out there and maybe it'll go away they're going to do it in the industry every single carrier council can i i want to ask you a question about coverage before your time runs out um what is the relationship between additional coverage point three the that additional coverage does not apply to a building that's standing what is the relationship between that provision and the exception to the exclusion exception to the exclusion creates coverage because it says it's an all risk policy and north carolina recognizes when an accident has more than one cause one of which is covered by an all risk yeah i understand that i'm asking you so the exception to the exclusion says collapse can be covered in certain situations way to people then the additional coverage section says collapses is also covered in these other certain situations but it says this additional coverage does not apply to a building that's in danger of falling down or caving in or a building that's still standing etc how does that provision talking about still standing or not having fallen down or caved in but in danger of it how does that relate to what it means to collapse under the exclusions and exceptions to the exclusions which are in a different they're not under additional coverage collapse but they're both talking about collapse how do those relate we have additional collapse is any part of the building now this panel fell down how many feet does it have to fall down to make it fall down under this policy doesn't say so so then they say okay is it yes that means that it hasn't fallen in or caved in it's in danger danger means future it already caved in there is part of the breezeway that's on the ground it caved in and it went to the ground so you're saying these this definition of collapse this expanded definition in part three that says it doesn't apply to things that are still standing you think that applies to and defines what it means to collapse under the exclusions in section one i think it's an ambiguous as can be i don't know what it means all i know is it's not going to take away coverage when you have ambiguous whenever you can in north carolina's most favorable insurance coverage for the policyholder in a country it says if you can find coverage you have to find coverage if there's any doubt that there's an ambiguity there's an ambiguity this is ambiguous language they have okay thank you okay going back to the really the unfairness of the trade practices so you have that mr dual you're up you're over your time so i'm gonna have to uh stop you you're over your time uh mr brown you have some time left for the endorsement the collapse endorsement has two components and they stand alone the first part of it is the exclusion so if you take the collapse exclusion and out of the endorsement and put it on the base policy that would be applicable if we were trying to deny coverage based upon the collapse exclusion we're not trying to deny coverage based upon the collapse exclusion so therefore that first portion including the exception to the exclusions for people at center is irrelevant what is relevant is the next yes i appreciate you trying to help me sort this out but can i ask you to assume hypothetically against i know you don't think that section one applies but but if i thought it did if i thought that the exception to the exclusion there was you know provided coverage how do i define collapse under that exception do i look to the additional coverage provision to help me define collapse or is that prohibited because it's a different section i'm not sure no the the the gateway to coverage here for the insured is without question under the collapse endorsement uh language before you so the way if there is coverage afforded here it necessarily has to be afforded under the coverage grant for collapse and so therefore subsection three of that modifies everything having to do with collapse so therefore there is no collapse unless the building has fallen down or is in danger of falling down a building that is standing or any part of the building that is standing even if it shows evidence of cracking bulging sagging bending leaning settling shrinkage or expansion is not collapsed so very succinctly that's where we hang our hat that there's no coverage here it's borrowed under the exclusions and policy that we discussed earlier that judge eagles identified the only route to coverage is through the collapse endorsement and the collapse endorsement uh none of it can afford coverage if the building is still standing even if it has cracking bulging sinking expansion etc which is what we have here what what what about the fact that the builder was condemned two days later and it's not occupiable and it was condemned because of the 14 years worth of water intrusion and wood rot that the engineers identified that's why it was condemned not because of anything that happened abruptly on that night um well mr brown that's not accurate because it would not have been condemned but for what happened that night there would have there would have been no reason for them to know about it well it it was it was known about it became manifest that night i agree with you and whether it became manifest because of the crack or whether it became manifest because they this seems to be a little you know a little bouncy as i walk across the breezeway let's look at it whatever caused the damages to become manifest uh then led to the need for the repairs due to the long-term corrosion i agree with you that that the events of that night create a manifestation date if you will but that doesn't that doesn't in and of itself create coverage um let me speak to the letter if i might um the letter of course is an appendix 438 and the letter that's in question and let's just big picture here what we're talking about is can the plaintiff not only find coverage but trouble the contract damages because there's something about this letter that is a violation of subsection n failing to properly provide an explanation the context here is philadelphia investigates this claim promptly gets an engineer out there promptly within within a month um or a month and a week they've they've done quite a bit of work on this whole project they go through all the engineering reports they identify the policy provisions they don't hide the fact that there's a collapse endorsement they cite the p pu ult 142 on page a 441 they don't hide that there's nothing deceptive about it and at the end of the policy language they say we respectfully must deny coverage because the damage is reportedly the result of long-term water intrusion and deteriorated wood framing then they go on to say at the bottom of that page we trust your understanding of our coverage position is clear however should you disagree please promptly communicate with us so there's nothing you know the there's been several suggestions here today that somehow philadelphia was trying to get the insurer to go away and leave them alone and not come back etc and the contrary this is a very prompt claims investigation an explanation that we're denying coverage for a very specific reason did it did it cite policy language perfectly no was it written by you know legal counsel after you know much analysis no but this was a good faith attempt explain to the insurer what was going on uh there was no willful violation attorney's fees and a violation of the statute should not have been found and certainly the contract damages cannot be awarded based upon the letter thank you all right thank you mr brown thank you both for your arguments the case has been submitted we would typically come down in greek council we can't do that this afternoon but we appreciate your i think according to the rules because it's a cross appeal took both of us a few last five minute rebuttals they're absolutely right go ahead listen to them thank you very much judge yes so one thing is they did not cite the exclusion because they didn't cite the part that provided coverage here where water damage is mentioned and i'm sorry way the people was mentioned and so don't say that was cited because it's not there and then additional coverage collapse the only cited the exclusions that you referenced earlier and the other one and a half pages were left out and then you numbered it wrong by number you being your client i'm sorry david not you but um number one but i'm changing three so you know that something preceded it so that was not cited in the policy and it was never discussed in the that's all you go to it's not complicated and going back to the unfair inceptive so you either have a continuous transaction there's many cases that say they have a continuous transaction and they with a breach contract and it's related to the breach of contract then you have trouble damages there's also cases that say if you have aggravating circumstances you get trouble damages ray says there were no findings of aggravating circumstances so there could be no trouble damages in the breach contract some reason the plaintiff's lawyer asked the interrogatories the way he did and they never found aggravating circumstances the breach contract they found aggravating circumstances in the 117 000 of probably the claim where they were sending the to the because they asked the first thing what's a breach contract and then they were sending the check to somebody who had a lien so that one says it does not have aggravating circumstances so you couldn't have trouble damages in gray after gray who appeals on four occasions found aggravating circumstances and said if you have aggravating circumstances and a breach of contract you take together you don't separate them and you don't have to say okay i want an approximate cause for this event i want approximate cause for that no it's one event what are the damages it's simple and you know i can go through what judge eagle said she said there were damages she actually said there were approximate cause of damages um on and on he said it's undisputed that philadelphia did not pay anything on a valid insurance claim so dnc has proven that philadelphia approximately injured dnc so three you have to have the unfair and deceptive trade practice affecting commerce approximate cause she says right there there's approximate cause harming dnc and then finally she says the same injury forming the basis of plaintiff's breach of contract claim is also sufficient for the purposes of an unfair and deceptive practice claim so she's already ruled that we should be getting trouble damages and for some reason she issued an a order without any statement it's just one page it says i'm only going to award nominal damages and there's no yes transaction you have the aggravating circumstances and you have the per se violation and the per se violation has been interpreted to be the language i believe is unfair so if you have a statutory violation rule 58 such conduct is inherently unfair unscrupulous immoral or injurious to consumers so the question is as a matter of law per se violation do you get you don't have to show aggravating circumstances because that language is the same as aggravating circumstances and it's saying it's a matter of law it's immoral inscrupulous and you look at the regular packing packaging case concealing a breach combined with acts to deter further investigation is enough to show aggravating circumstances so you got aggravating circumstances you have whether or not a per se violation and the transactions if all these cases that show if basically it's simple if you have a breach of contract and you have unfair and deceptive trading practices that relate to the breach contract then you get trouble damages or else the statute would have no effect whatsoever and the public policy is basically written in marshal is you need to have a remedy and that's why the legislature enacted the statute and it's very clear Mr. McDougall you're a little bit over your time I'm going to let you say another sentence or two then I'm going to have to stop you the purpose of the statute is supposed to be for remedial for other reasons private enforcement and the fact that it provides a remedy for aggrieved parties well if we take the defense David Brown's argument there would be no remedy and the purpose of 75.1 is because and this is written Marshall v Miller Supreme Court unfair fair deceptive trade practice act was needed because common law remedies had provided up and ineffective remedies for example proof of actual fraud involved heavy burden of proof including a showing of intent to deceive so that's why they enacted it and the purpose of 75.11 by the legislature and I'll end on this to declare and to provide civil legal means maintain ethical standards and dealings between persons engaged in business and between persons engaged in the consuming public within the state to the end that good faith and fair dealings between the buyers and sellers that all levels of commerce be had in the state sounds pretty good to me that's the purpose of the statute and that's plaintiff's position is have to have a remedy and you have a remedy throughout all these different laws all right thank you sir all right the case has now been submitted and again I thank counsel for their arguments we typically come down from the bench and thank you personally we can't do that obviously given the circumstances but we nonetheless appreciate your arguments and thank you counsel
judges: Albert Diaz, Henry F. Floyd, Allison J. Rushing